*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* T. HEWITT, Minor.

UNPUBLISHED
October 23, 2024
3:42 PM

No. 368861
St. Joseph Circuit Court
Family Division
LC No. 2022-000699-NA

Before: N. P. HOOD, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Respondent-mother appeals as of right[1] the trial court's order terminating her parental rights to the minor child, TH, under MCL 712A.19b(3)(j) (reasonable likelihood that, based on the conduct or capacity of a parent, the child will be harmed if returned).[2] We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

TH was born to respondent-mother and respondent-father in January 2022. The Department of Health and Human Services (DHHS) became involved with the family after Children's Protective Services (CPS) investigated alleged domestic violence incidents involving respondents. The catalyst for the petition in this case was a June 2022 incident, during which respondent-father allegedly threw a metal figurine at respondent-mother's head and assaulted her with a propane torch while she held TH in her arms. Respondent-father told the police officers he called to the scene that respondent-mother attempted to assault him with multiple objects during

---

[1] The trial court also terminated respondent-father's parental rights to TH. Respondent-father has not challenged the termination of his parental rights on appeal.

[2] The petition also cited MCL 712A.19b(3)(g) (failure to provide proper care or custody) as a statutory basis for termination, but the trial court made no specific findings regarding that statutory subsection.

-1-

the incident, including a knife.[3] As a result of the June 2022 incident, the DHHS opened an investigation and offered respondents services through Family First. By August 2022, respondent-father was incarcerated for an assaultive crime.

Respondent-mother was discharged from Family First for failure to address issues of domestic violence and her level of contact with respondent-father. Following this continued contact, in September 2022, the DHHS petitioned the trial court to exercise jurisdiction over TH under MCL 712A.2(b)(2) (unfit home or environment). Respondent-mother entered a plea of admission to the DHHS's allegations regarding TH's exposure to domestic violence. Respondent-mother admitted that TH was exposed to domestic violence in the family home, and exposure to domestic violence was contrary to his welfare. The trial court also entered a no-contact order between respondents.

The DHHS provided services to respondent-mother for a little over a year to address domestic violence, substance abuse, and mental health as barriers to reunification. Respondent-mother consistently attended infant mental health therapy, which focused on establishing an environment free from domestic violence for TH. However, she did not consistently attend other services offered to address domestic violence, her marijuana use, and mental health. Despite participating in infant mental health therapy, service providers reported that respondent-mother continued to minimize the severity of the domestic violence in this case and was deceptive about maintaining contact with respondent-father. When confronted with evidence of contacts with respondent-father, respondent-mother admitted to maintaining contact.

Respondent-father was incarcerated on and off throughout this case. He continued to act violently toward respondent-mother, including assaulting her in front of CPS agents, threatening to kill her at her workplace, and in August 2023, breaking into her home on several occasions. During one break-in, respondent-father both physically and sexually assaulted her. Respondent-mother testified that she last contacted respondent-father in jail two months before the termination hearing to ask him for forgiveness and to ask him to fight for her. Afterward, she changed her number and claimed that she stopped contacting respondent-father. Contrary to her assertion, respondent-father testified that respondent-mother continued to contact him via text message as recently as the week before the termination hearing, using his father as an intermediary.

In November 2023, the trial court terminated respondent-mother's parental rights under MCL 712A.19b(3)(j) on the basis that TH would be exposed to the harm of the cycle of domestic violence between respondents. The trial court credited that respondent-mother was a perpetrator to an extent, but was primarily the victim of respondent-father's severe acts of domestic violence. The trial court explained that respondent-mother did not benefit from services because she continued to contact respondent-father up through the termination hearing. This appeal followed.

---

[3] According to the petition, respondent-father was "charged with domestic violence" after the incident, but respondent-mother was not.

## II. PLEA OF ADMISSION

Respondent-mother first argues that the trial court erred by accepting her plea of admission at the pretrial hearing because her plea was not made knowingly or understandingly, and because the trial court did not advise her of her appellate rights. Because we conclude that respondent-mother cannot satisfy the plain-error standard, we disagree.

Respondent-mother did not move to withdraw her plea establishing jurisdiction over TH, or otherwise challenge her plea's validity; therefore, this issue is not preserved. See *In re Pederson*, 331 Mich App 445, 462; 951 NW2d 704 (2020). We review unpreserved claims of error in a termination of parental rights case for plain error affecting substantial rights. *Id*. at 463; see also *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ____ (2023) (Docket No. 359090); slip op at 5 n 3. Plain error affecting substantial rights is established if: (1) the error occurred; (2) the error was clear or obvious; (3) that plain error affected substantial rights; and (4) reversal is warranted only when the plain, forfeited error "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Pederson*, 331 Mich App at 463 (quotation marks and citation omitted). "Substantial rights" are affected when it is established "that the error affected the outcome of the lower court proceedings." *Id*. (quotation marks and citation omitted). The party asserting plain error bears the burden of persuasion with respect to prejudice. *Id*.

"In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). During the adjudicative phase, the court determines whether it may exercise jurisdiction over a child. *Id*. "The court can exercise jurisdiction if a respondent-parent enters a plea of admission or no contest to allegations in the petition, see MCR 3.971, or if the [DHHS] proves the allegations at a trial, see MCR 3.972." *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019).

Before accepting a plea of admission, the trial court must advise the respondent of her appellate rights, among other rights. MCR 3.971(B)(1)-(8). Advisement of these rights must be made "on the record or in a writing that is made a part of the file." MCR 3.971(B). Additionally, both MCR 3.971 and due process requires that a respondent's plea be voluntarily and knowingly made. *In re Ferranti*, 504 Mich at 21; MCR 3.971(D)(1) ("The court shall not accept a plea of admission or of no contest without satisfying itself that the plea is knowingly, understandingly, and voluntarily made.").

The record of respondent-mother's plea of admission in this matter is replete with deficiencies. In numerous instances respondent-mother's responses are noted as inaudible, and multiple times the trial court was forced to interrupt the proceedings to address respondent-father's outbursts. Neither party has motioned to correct the record on appeal; however, this Court sua sponte requested the audio recordings of the plea hearing. Review of the audio recordings of the transcript did not remedy the deficiencies in the record. Although these deficiencies hamper our review, the record is sufficient to facilitate appellate review.

The record shows that the referee was informed by respondent-mother's counsel that respondent was willing to make an admission, indicating that respondent's counsel prepared respondent to enter her plea by explaining its ramifications. Thereafter, the referee advised

respondent of most of her rights under MCR 3.971(B).[4]  Following the referee's explanation, respondent-mother expressed a lack of understanding regarding the implications of her plea.  The referee allowed respondent-mother to confer with her attorney off the record.  When the hearing resumed, the referee asked if respondent-mother was ready to make an admission:

> *The Court*:  Okay, we're going to go back on the record in the matter of the Hewitt case, case number 22-699-NA.  We were in the middle of giving Mother her – her rights as to trials and what could happen, and she requested some time to speak with her attorney and so we are back and I'll go to her attorney as to – is there a resolution today.

> [*Respondent-Mother's Counsel*]:  Yes, your Honor.  We had a chance to – [respondent-mother] had some questions.  We discussed (inaudible) an admission.  We want to make an admission.

Thereafter, respondent-mother's counsel elicited the factual basis of the allegations from respondent-mother.  After the factual basis, the referee expressed reservations regarding respondent-mother's willingness to enter a plea:

> *The Court*: Well, the issue is your demeanor is not really giving any confidence to this Court as to—as to your admission, um, is this truly your—your admission, you're willing and wanting to do, take—give this admission today.

> [*Respondent-Mother*]: I don't really understand what admission means.  I mean it's like—I don't understand.  He explained to me what I have to do and (inaudible) and that's fine.  If that's what you're asking me, yes.

Following this exchange, the referee addressed an outburst from respondent-father and removed respondent-father from the courtroom.  Concerned about undue influence from respondent-father, the referee permitted respondent-mother to consult with her counsel off the record again and issued a no-contact order between respondents.  When respondent-mother returned, the referee accepted her plea and expressed that her and TH's safety were of upmost concern to the court.  The referee concluded by informing respondent-mother of her appellate rights.  Later, the trial court adopted the referee's recommendation and exercised jurisdiction over TH, removed him from respondent-mother's care, and ordered respondent-mother to complete a case service plan.

These facts, taken together, do not establish plain error.  After providing respondent-mother the opportunity to consult with counsel off the record, the referee asked respondent-mother if she wished to proceed with making a plea of admission.  Respondent-mother's counsel advised the referee that respondent-mother had the opportunity to substantively discuss the ramifications of making a plea of admission with counsel and wished to proceed with entering such plea.  Respondent-mother made no response contrary to counsel's statement.  Moreover, the referee followed up this exchange by expressing concern that respondent-mother's admission was

---

[4] We address the referee's failure to advise respondent-mother of her appellate rights before accepting her plea later in this Issue.

-4-

influenced by respondent-father, removed respondent-father from the courtroom, and permitted respondent-mother to consult with her counsel an additional time before accepting her plea. Together, the referee's reliance on the assurance of respondent-mother's counsel, the several opportunities for respondent-mother to consult with counsel off the record, and the referee's own inquiry to ensure respondent-mother's plea was not influenced by respondent-father support that the referee "satisfy[ied] itself that the plea is knowingly, understandingly, and voluntarily made." MCR 3.971(D)(1). Minimally, these circumstances cannot be characterized as "clear or obvious" error. See *Pederson*, 331 Mich App at 463 ("A clear or obvious error under the second prong is one that is not subject to reasonable dispute.") (quotation marks and citation omitted).

Even if the trial court committed plain error, respondent-mother has not argued that plain error affected her substantial rights or seriously affected the fairness, integrity, or public reputation of judicial proceedings. See *id*. "Insufficiently briefed issues are deemed abandoned on appeal." *In re Rippy*, 330 Mich App 350, 362 n 5; 948 NW2d 131 (2019) (quotation marks and citation omitted). As such, we cannot conclude that any error in the trial court's acceptance of respondent-mother's plea of admission under MCR 3.971(D) requires reversal.

Relatedly, respondent-mother argues that the referee erred by failing to advise her of her appellate rights before accepting her plea of admission. MCR 3.971(B)(6) requires the trial court to advise a respondent on the record or in a writing that is made a part of the file of her appellate rights before accepting a plea of admission. Indeed, review of the record shows that, although the referee advised respondent-mother of most of the rights listed in MCR 3.971(B), the referee did not inform respondent-mother of her appellate rights before accepting her plea. This was error. However, respondent-mother again failed to argue this error affected her substantial rights or seriously affected the fairness, integrity, or public reputation of judicial proceedings. See *In re Rippy*, 330 Mich App at 362 n 5. Although this issue is waived, we note the referee informed respondent-mother of her appellate rights after accepting her plea of admission and mailed her an advice of appellate rights form approved by the Supreme Court Administrative Office.

## III. STATUTORY GROUNDS

Respondent-mother argues that the trial court erred by finding sufficient evidence to support a statutory ground for termination. Concluding that the trial court's determination was supported by clear and convincing evidence, we disagree.

To terminate parental rights, a trial court must find by clear and convincing evidence a statutory ground warranting termination. *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020). The trial court's findings and rulings regarding statutory grounds are reviewed for clear error. *Id*. "A finding . . . is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed . . . ." *Id*. (quotation marks and citation omitted; ellipses in original). "At the hearing all relevant and material evidence, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value." MCR 3.977(H)(2). Further, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Mota*, 334 Mich App at 320. (quotation marks and citations omitted).

The trial court terminated respondent-mother's parental rights under MCL 712A.19b(3)(j), which provides:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> * * *

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent.[5]

First, respondent-mother asserts that the trial court clearly erred by finding that she had maintained contact with respondent-father up until the date of the termination hearing. Respondent-mother asserts that the trial court relied solely on the testimony of respondent-father, who she asserts is not credible, in support of this finding. We disagree.

The trial court made two credibility determinations in relation to this finding; it discredited respondent-mother's testimony that she ceased contact with respondent-father in September 2023 and credited respondent-father's testimony to the contrary. Respondent-mother's argument directly challenges the trial court's ability to assess the credibility of the witnesses that appear before it. However, it is not for this Court to displace the trial court's credibility determinations. See *In re Mota*, 334 Mich App at 320. Presented with respondent-mother's continued contact with respondent-father throughout this case and her deception toward her service providers, it was reasonable for the trial court to discredit respondent-mother's testimony and to credit respondent-father's testimony. The fact that petitioner did not produce text messages in support of respondent-father's testimony that respondent-mother was contacting him through his father did not preclude the trial court from assigning respondent-father's testimony its appropriate weight or credibility. See MCR 3.977(H)(2). Given the trial court's superior position to assess the credibility of the witnesses, we are not left with a definite and firm conviction that the trial court clearly erred by finding that respondent-mother continued to contact respondent-father up through the termination hearing. See *In re Mota*, 334 Mich App at 320.

Second, respondent-mother argues that the trial court erred by finding a statutory basis to terminate her parental rights because the trial court relied too heavily on past conduct. We disagree.

Respondent-mother's issues regarding domestic violence and continuing contact with respondent-father persisted throughout these proceedings. The evidence supports the trial court's determination that respondent-father was primarily the aggressor and engaged in severe acts of violence. Respondent-mother testified that respondent-father struck her in the head with a shovel and threw her on top of a car while she was pregnant. The DHHS became involved with

---

[5] Former MCL 712A.19b(3)(j) was in effect at the time the trial court issued its November 9, 2023 order in this case. MCL 712A.19b(3)(j) was amended effective February 13, 2024, to replace "he or she" with "the child." See 2023 PA 295.

respondents following an incident in which respondent-father threw a metal figurine at respondent-mother's head and assaulted her with a propane torch while she held TH in her arms. Incidents of domestic violence continued throughout the proceeding. Respondent-father threatening to kill respondent-mother at work. In August 2023, respondent-father broke into respondent-mother's home multiple times and assaulted her. These incidents demonstrate that respondent-father presented a continuing threat to both respondent-mother and TH.

Although the trial court concluded that respondent-mother was primarily the victim, the trial court also concluded that, to a lesser-extent, respondent-mother perpetrated acts of domestic violence against respondent-father. Record evidence supported this finding. Respondent-mother refuted that she initiated physical domestic violence, but testified that she engaged in verbal domestic violence toward respondent-father. Heather DeCastro, an infant mental health therapist, testified that respondent-mother admitted to experiencing issues with anger management and volatility. Respondent-mother acknowledged to DeCastro that the incident that initiated these proceedings involved her and respondent-father throwing objects at each other and that she became so angry that she punched out a window.

It is impermissible to terminate a respondent's parental rights "solely because he or she was a victim of domestic violence;" however, termination is permissible when a "respondent's own behaviors were directly harming the children or exposing them to harm." *In re Plump*, 294 Mich App 270, 273; 817 NW2d 119 (2011); see also *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 334-335; 985 NW2d 912 (2022). In this case, respondent's own behaviors exposed TH to the harm of domestic violence. Respondent-mother's refusal to cease contact with respondent-father throughout this case. The presence of respondent-father, who assaulted respondent-mother with a propane torch while she held TH and continuously engaged in acts of physical violence, in the home created a risk of emotional and physical harm to TH. Although respondent-mother made improvements in the couple months before termination, her continued contact with respondent-father over the more than 12-month pendency of this case demonstrated that she did not benefit from services and did not appreciate that the severe domestic violence in this case put TH in danger. *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014) (explaining that "a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home). Therefore, the trial court did not clearly err by terminating respondent-mother's parental rights under MCL 712A.19b(3)(j).

## IV. BEST INTERESTS

Respondent-mother next argues that the trial court erred when it found that it was in TH's best interests to terminate respondent-mother's parental rights by exclusively relying on respondent-mother's inability to provide stability and permanence. She also argues that the trial court erred by undervaluing her bond with TH and the progress she had made in the two months preceding the termination of her parental rights. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012); see also MCL 712A.19b(5). Whether termination of parental rights is in a child's best interests must be established by a preponderance

of evidence. *In re Mota*, 334 Mich App at 320. The trial court's findings and ruling that termination serves the child's best interests are reviewed for clear error. *Id*.

When considering best interests, the focus is on the child's interests rather than the parent's interests. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. When deciding whether termination is in the child's best interests, the trial court "may consider the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). The trial court can also consider the likelihood that "the child could be returned to [the] parent's home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). "Brief, definite, and pertinent findings and conclusions on contested matters are sufficient." MCR 3.977(I)(1).

The trial court did not solely rely on respondent-mother's inability to provide stability and permanence. Instead, the trial court considered several factors: (1) experts' opinions (2) likelihood of adoption; (3) age of the child; (4) the child's bond to the respondent-mother; (5) the child's need for permanency, stability, and finality; and (6) respondent-mother's ability to provide a safe and stable home. The trial court also considered respondent-mother's history with domestic violence.

Respondent-mother also asserts that the trial court only addressed her strong bond with TH in passing. Review of the trial court's best-interest finding does not support this assertion. The trial court described respondent-mother's bond with TH when analyzing the best interests of TH. The trial court noted that it firmly believed that respondent-mother will always love TH. Although respondent-mother had a bond with TH, the best-interest analysis is designed to focus on the child and not the parent. See *In re Moss*, 301 Mich App at 87. Moreover, this bond was only one of several factors for the trial court to consider in the best-interest analysis, and the trial court did not clearly err in finding that the benefit of respondent-mother's bond with TH was outweighed by the other factors. See *In re White*, 303 Mich App at 713. For these reasons, the trial court did not err by finding that termination was in TH's best interests.

Affirmed.

/s/ Colleen A. O'Brien
/s/ James Robert Redford